# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                    No. CR 10-0773 JB

JOHN LEONARD TSOSIE,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Motion to Prohibit Defendant from Calling Accident Reconstructionist David N. Torres as a Fact Witness, filed May 18, 2011 (Doc. 97). The Court held a hearing on June 14, 2011. The primary issue is whether Defendant John Leonard Tsosie can call David N. Torres, a consulting accident reconstructionist Plaintiff United States of America retained in this matter, as a defense witness. Because Tsosie is not entitled to call Torres as an expert or as a fact witness, the Court will grant the Motion, prohibit Tsosie from calling Torres, and quash Tsosie's subponea for Torres.

## FACTUAL BACKGROUND

The charges in this case arise from a fatal crash that occurred sometime before 5:11 a.m. on October 17, 2009. Tsosie was driving one of the vehicles involved in the crash. Manuel Johnson was driving the other vehicle, and his wife, Loretta Johnson, was the passenger. Neither of the Johnsons survived.

## PROCEDURAL BACKGROUND

On March 24, 2010, a federal grand jury returned a two-count indictment charging Tsosie

with two counts of involuntary manslaughter for killing M. and L. Johnson while operating a motor vehicle while under the influence of alcohol, contrary to N.M.S.A. 1978, § 66-8-102, and driving recklessly, contrary to N.M.S.A. 1978, § 66-8-113, in violation of 18 U.S.C. §§ 1112 and 1153.  <u>See</u> Indictment, filed March 24, 2010 (Doc. 1).

On March 17, 2011, Tsosie filed a notice indicating that he intends to call Torres.  <u>See</u> Defendant's Notice Regarding Intent to Call David N. Torres, Accident Reconstructionist Specialist as a Defense Witness, filed March 17, 2011 (Doc. 70)("Notice").  On May 18, 2011, the United States filed its Motion, requesting that the Court prohibit Tsosie from calling Torres, a consulting accident reconstructionist whom the United States retained in this matter, as a defense witness.  The United States asserted that Torres is not a fact witness, because he has no personal knowledge of the events in this case, and that Torres cannot properly be forced to testify as Tsosie's expert, because the United States retains him.  Tsosie responds that the jury should be permitted to hear about Torres' conclusions and his Report.  <u>See</u>  Defendant Tsosie's Response to United States' Motion to Prohibit Defendant from Calling Accident Reconstructionist David N. Torres as a Fact Witness, filed May 31, 2011 (Doc. 100).  The United States replies that Tsosie ignores the law that governs when a person may be treated as a fact witness and that he fails to establish that Torres would provide anything other than testimony cumulative to the testimony from the United States' testifying accident reconstructionist, Lauren Milligan.  <u>See</u> Reply in Support of United States' Motion to Prohibit Defendant from Calling Accident Reconstructionist David N. Torres, filed June 9, 2011 (Doc. 104).

At the June 14, 2011 hearing, the United States argued in support of its Motion, contending that Torres is not a fact witness, and that his report is not materially different from the report of Milligan, the United States' certified accident reconstructionist who will testify at Tsosie's trial.

The United States asserts that Torres does not have access to information that is otherwise unavailable, that any information he has was obtained after prosecution of Tsosie began, and that he has no first-hand knowledge of the events or issues in this case. See Transcript of Hearing at 10:13-11:2 (taken June 14, 2011)(Nayback)("Tr.").[1]  The United States stated that it retained Torres as a second opinion for Milligan and that Torres continues to consult with the United States. See Tr. at 10:20-22 (Nayback).  The United States asserted that Tsosie cannot call Torres as a fact witness, because he does not have any personal knowledge of this case. See Tr. at 11:10-11 (Nayback).

The United States stated that Milligan, who issued his report before Torres' report was issued, has reviewed Torres' report, but did not rely on Torres' opinion. See Tr. at 13:9-21 (Nayback).  It contends that both Milligan and Torres agree that the Johnsons were in Tsosie's lane and that, while their reports provide "mild variations in speed calculations," there is no material difference between their reports.  Tr. at 15:18-22 (Naybeck).

The United States conceded that Tsosie would be permitted to cross-examine Milligan about Torres' report and about the United States having retained two experts. See Tr. at 15:23-16:11 (Court, Nayback).  Tsosie agreed that being permitted to cross-examine Milligan about Torres' report would satisfy him. See Tr. at 21:13-16 ("MR. WINDER: . . .  If I can cross-examine Mr. Milligan that he is consulting with another expert and that expert has come to the same conclusion, that the vehicle went into my client's lane, I believe that we would be comfortable with that.").  Tsosie indicated that he would not take issue with the Court quashing Tsosie's subpoena in light of

---

[1] The Court's citations are to the Court Reporter's original, unedited version.  A final version may contain slightly different line or page numbers.

its inclination to grant the Motion.[2]

At the hearing, the United States requested that Tsosie not be permitted to call Salvantis Begay, a criminal investigator who testified before the Grand Jury.  The United States contended that Begay has no personal knowledge about this case and cannot be compelled to testify.  Tsosie stated that he would not object to examining Begay outside of the presence of the jury to determine whether Tsosie can elicit admissible testimony from him before he testifies in front of the jury at trial.  See Tr. at 33:2-16 (Court, Winder).

## ANALYSIS

The Court will grant the United States' Motion, prohibit Tsosie from calling Torres at trial, and quash Tsosie's subpoena for Torres.  Tsosie is not entitled to call Torres as an expert or fact witness.  Because the United States retains him, Torres has declined Tsosie's solicitation of his services as an expert witness.  See Electronic Mail Transmission from David Torres to Samuel Winder (dated April 18, 2011), filed May 18, 2011 (Doc. 97-2)("After considering your request, I have decided not to testify as an expert for Mr. Tsosie on this case.  Initially, I was hired to look at this case by the United States in April 2010 and I have been paid for my services.").  The United States asserts that "Torres conducted a reconstruction of the collision between the defendant and the victims . . . .  He remains under contract with the United States.  In addition to providing a beneficial second opinion to Lauren Milligan, . . . Torres continues to consult with the United States on this matter."  Motion ¶ 2, at 2.  Because the United States has retained Torres, Tsosie concedes that he cannot call Torres as his expert.  See Notice ¶ 13, at 4 ("Upon information and belief, Mr. Torres

---

[2] Tsosie stated that he is not moving to continue the trial to hire his own accident reconstruction expert or asking the Court to do anything with regard to the Grand Jury, and that he will not discuss the Grand Jury in front of the jury at trial.  See Tr. at 24:14-25:13 (Court, Winder).

may have been paid by the United States for his services.  Consequently, Mr. Torres cannot be called as an expert witness for the defense.").

Torres' opinion testimony is his to sell or give away.  He cannot be compelled to testify as an expert absent extraordinary circumstances.  Tsosie has not asserted that he faces extraordinary circumstances, as there appears to be multiple accident reconstruction experts available and because Tsosie wants to show that Torres would largely duplicate Milligan's testimony.

Tsosie also cannot subpoena Torres as a fact witness, because Torres does not have personal, first-hand knowledge of the facts in this case.  See United States v. Hoffner, 777 F.2d 1423, 1425 (10th Cir. 1985)(stating that, for a lay opinion to be "rationally based on the perception of the witness," the witness must have "first hand knowledge" of the events to which he is testifying).

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony.  This rule is subject to the provisions of rule 703, relating to opinion testimony by expert witnesses.

Fed. R. Evid. 602.  As Tsosie states in his Notice:

> Mr. Torres sets forth that he performed an investigation and analysis of the collision. In that regard, Mr. Torres reviewed the Navajo Department of Law Enforcement Accident Reports and field notes, scene and vehicle damage photographs.  The reports included diagrams with measurements of the accident scene and evidence identified on the date of the accident.  Mr. Torres also reviewed NMSP Accident Reports, CDR Report and vehicle damage photographs.  Mr. Torres used the information to reconstruct the collision, locate and identify physical evidence and also identify evidence that was visible at the accident site.

Notice ¶ 6, at 2.  Because Torres does not have first-hand knowledge of the events in this case, he cannot offer lay witness opinions testimony.  See Fed. R. Evid. 701 ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness . . . .").

In <u>Boutwell v. SW Commerical Management, Inc.</u>, No. CIV 07-1103 JB/LFG, 2009 WL 2950839 (D.N.M. Aug. 7, 2009)(Browning, J.), the Court considered whether to strike "a report written by Michael Walla of Walla Engineering, Ltd. addressing the collapse of the roof" or to preclude the plaintiff from calling Walla.  The plaintiff contended that the defendants advanced an argument that was "at odds with their theory in an earlier case stemming from the same incident." 2009 WL 2950839, at *2.  The plaintiff asserted that "the Defendants' expert from that earlier case, Walla, had concluded that the roof collapse was caused by the roof's substandard construction and deficient repairs after an earlier collapse."  2009 WL 2950839, at *2.  The Defendants moved to strike Walla's report, "contend[ing] that none of the parties ha[d] designated, retained, or disclosed Walla as an expert in [the later] case."  2009 WL 2950839, at *3.  The Defendants stated that "Walla's report pre-dated the [earlier litigation], and was never disclosed in that case, and thus the Defendants never ratified that report in a way that would make it an admission," and that "Walla may have done work on behalf of an insurance company, but was not named by any party in the earlier case as an expert." 2009 WL 2950839, at *4.  The Court denied the motion to strike and held that it would allow the plaintiff to call Walla, because "the facts of th[at] case [we]re similar to the situations in which a plaintiff finds an engineering report by an in-house engineer, and d[id] not warrant striking Walla's report or precluding Boutwell from calling Walla as a witness."  2009 WL 2950839, at *1.  The Court stated:

> Before turning to any other issues, the Court will decide whether to allow Boutwell to use Walla's report or to call Walla as a witness at trial.  This issue is . . . . an unusual issue that does not fit neatly within the confines of any particular rule.  Taking guidance from several areas of law, the Court concludes that the most appropriate course here is to allow Boutwell to rely on Walla, but to carefully confine the extent of any testimony at trial.

> As a starting point, the Court notes that the evidence Walla could provide and that his report provides are relevant to the issues in this case.  His opinions and

observations concern the collapse that is the primary issue here.  The burden is on the Defendants to demonstrate why the Court should not consider the evidence.

[T]he situation is at least somewhat analogous to the situations that rule 801(d)(2)(D) of the Federal Rules of Evidence addresses.  That rule makes "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," not hearsay.  Fed. R. Evid. 801(d)(2)(D).  While the question here is not one of hearsay as such, that evidence rules contemplate allowing, as admissions, out-of-court statements by a party's agents suggests that courts should generally allow such evidence.  And, if the rule applies, it also deprives the Defendants of the ability to argue that Walla's report would be hearsay, although that is not a defense they have raised at this time.

Walla's letter is addressed to Jennifer Ashmore, who is identified in the letter as connected with Sunwest and whom Mr. Lyle represented is a principal of Sunwest.  Walla writes that "[i]n accordance with our agreement with Sunwest we have completed a structural evaluation of the above referenced structure."  The "above referenced structure" is the "Big Lots Retail Store Roof Failure, Albuquerque, New Mexico."  Based upon this language, Walla's report appears to have been conducted at one of the Defendants' request and to be within the scope of their agreement.  Thus, from the record before the Court, rule 801(d)(2)(D) would apply.

One wrinkle in this result might be that Walla would be considered a non-testifying or consulting expert.  "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."  Fed. R. Civ. P. 26(b)(4)(B).  It is not clear that Walla, who was retained before the earlier lawsuit was filed, was necessarily retained in anticipation of litigation, although that is not unlikely.  In any event, the information that Boutwell wants to use has been disclosed.  The disclosure has waived any assertion that Walla or his work would be non-discoverable or perhaps protected by the work-product privilege.  The disclosure was not inadvertent, rather the Defendants state they thought it was a required disclosure.  See Employer's Reinsurance Corp. v. Clarendon Nat. Ins. Co., 213 F.R.D. 422, 427 (D. Kan.2003)(declining to find automatic waiver for inadvertent disclosures); Atari Corp. v. Sega of America, 161 F.R.D. 417, 420 (N.D. Cal. 1994)(holding that voluntary discovery waived rule 26(b)(4)(B) protection).  If the Defendants had not produced the report, then Boutwell's attempt to get the report or to use Walla might violate the Federal Rules of Civil Procedure, see Durflinger v. Artiles, 727 F.2d 888, 891 (10th Cir. 1984)(holding that trial court was justified in excluding the expert that the defendants retained after the plaintiffs retained the expert as a consultant, but declined to call the expert as a witness and did not reveal the substances of his opinions in discovery), but Boutwell is doing nothing more than trying to use what the Defendants have handed her.  Moreover, whatever Walla's

status in the earlier litigation, he is not consulting or testifying for the Defendants in this case.

. . . .

   The situation is somewhat analogous, as Boutwell contends, to that of a treating physician.  Treating physicians are not required to issue expert reports because they are not retained experts, even though they give expert opinions that they form earlier and that are now historical facts.  See Watson v. United States, 485 F.3d 1100, 1107 (10th Cir. 2008).  On the other hand, treating physicians must limit their testimony to opinions and conclusions drawn earlier from prior examination and treatment of their patients.  See Sturgeon v. ABF Freight Systems, Inc., No. CIV 02-1317 JB/WDS, Memorandum Opinion and Order at 3-4, entered January 14, 2004 (Doc. 121)(Browning, J.).  Similarly, Boutwell is not seeking to retain Walla to investigate and offer opinions on the collapse in the manner of a traditional expert, but rather attempting to use Walla's previously prepared report, and call Walla as a witness to testify about what he observed and the conclusions he reached in the past, during his pre-trial investigation.  What Boutwell is seeking to accomplish is analogous to how courts handle the testimony of treating physicians and this similarity is another reason that an expert report is not necessary, as well as a further reason why allowing the testimony and the report are appropriate more generally.

   In sum, the Court does not see any sound reason, based on the rules of procedure or evidence, or otherwise, to preclude Boutwell from relying on Walla's report or from calling Walla to testify about his observations and about the conclusions drawn from them.  Like a treating physician, however, Walla's opinion testimony will be limited to those opinions from his earlier investigation of the collapse.  The situation here is similar to a plaintiff finding an internal report from the defendant's file written by the defendant's in-house employee, and . . . the Court does not see a sound reason to exclude Walla or his report . . . .

2009 WL 2950839, *5-7 (emphasis added)(footnotes and citations to the record omitted).  The Court

thus limited Walla's testimony to his personal knowledge that he developed before litigation

commenced, with restrictions similar to those it would place on a treating physician.  In contrast to

Walla, Torres has no personal, first-hand knowledge of the issues in this case; he knows only what

he learned in reviewing the information available to all the parties in preparing his expert report.

Applying the same principles the Court developed in Boutwell v. SW Commerical Management,

Inc., Torres can offer no information about a prelitigation investigation, because his involvement

in this case was exclusively for the purposes of prosecuting Tsosie while Torres was retained by the United States.  Torres does not have access to information that is otherwise unavailable, and what information he has obtained he learned second-hand after prosecution of Tsosie began.  The Court will therefore prohibit Tsosie from calling Torres as a witness and quashes Tsosie's subpoena for Torres.  Based on the parties' agreement at the hearing, the Court will allow Tsosie to cross-examine Milligan about Torres' report and about the United States' retention of two accident reconstruction experts.

At the hearing, the United States requested that Tsosie not be permitted to call Begay, a criminal investigator who testified before the Grand Jury.  The United States contends that, like Torres, Begay has no personal knowledge about this case.  Tsosie stated that he would not object to examining Begay outside of the presence of the jury first to determine whether Tsosie can elicit admissible testimony from him.  See Tr. at 33:2-16 (Court, Winder).  The Court will therefore allow Tsosie to examine Begay outside of the jury's presence, and the Court will hear the parties' arguments at that time whether Begay can offer admissible evidence to the jury.

**IT IS ORDERED** that the United States' Motion to Prohibit Defendant from Calling Accident Reconstructionist David N. Torres as a Fact Witness, filed May 18, 2011 (Doc. 97), is granted, and the Court quashes Defendant John Leonard Tsosie's subpoena for David N. Torres.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Kyle T. Nayback
Mark T. Baker
  Assistant United States Attorneys
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Samuel L. Winder
Albuquerque, New Mexico

      *Attorney for the Defendant*